## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **KYLE GENE BOWEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-20-955-P** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his applications for disability insurance benefits and supplemental security income under Titles II & XVI of the Social Security Act, 42 U.S.C. §§ 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter AR___), and the parties have briefed the issues. For the following reasons, Defendant's decision is affirmed.

I.  Administrative History and Final Agency Decision

Plaintiff filed his application for disability insurance benefits on June 12, 2018, and supplemental security income on July 2, 2018. AR 203-04, 207-10. Plaintiff initially alleged he became disabled on January 1, 2009, and later amended the onset date to April 1, 2018. AR 37. The Social Security Administration denied

1

Plaintiff's applications on September 27, 2018, *see id.* at 50, 52, 54-66, 67-79, and on reconsideration on January 2, 2019. AR 80, 82, 84-99, 100-15.

Plaintiff appeared with counsel and testified at an administrative hearing conducted before an Administrative Law Judge ("ALJ") on July 16, 2019. AR 33-49. A vocational expert ("VE") also testified. AR 45-48. On September 5, 2019, the ALJ issued a decision in which he found Plaintiff was not disabled within the meaning of the Social Security Act. AR 7-20.

Following the agency's well-established sequential evaluation procedure, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 1, 2018, the alleged onset date. AR 12. At the second step, the ALJ found Plaintiff had one severe impairment, a seizure disorder. *Id.* At the third step, the ALJ found this impairment was not *per se* disabling as Plaintiff's seizure disorder did not meet or medically equal the requirements of a listed impairment. AR 14.

At step four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a full range of light work, with the following non-exertional limitations, "[T]he claimant cannot climb ladders, ropes, or scaffolds. The claimant is to avoid even moderate exposure to hazards, such as unprotected heights and heavy machinery." AR 15. At step five, relying on the VE's testimony, the ALJ determined Plaintiff could not perform his past relevant work. AR 18. Still relying on the VE testimony, the ALJ found Plaintiff could perform other jobs existing in

significant numbers in the national economy, including sales attendant, marker, and photocopy machine operator. AR 19. As a result, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, from April 1, 2018 through the date of the decision. AR 24.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. 20 C.F.R. § 404.981; *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009).

## II.  Issues Raised

Plaintiff raises two issues on appeal. First, Plaintiff contends the ALJ failed to properly consider his subjective complaints and/or reported symptoms and side effects regarding his seizure activity. Doc. No. 20 ("Op. Br.") at 5-11. Second, Plaintiff asserts the ALJ erred by not properly accounting for Plaintiff's seizure activities in the hypothetical scenarios he presented to the VE during the administrative hearing. *Id.* at 11-15.

## III.  General Legal Standards Guiding Judicial Review

Judicial review of Defendant's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). Substantial evidence "means-and means only-'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Biestek v. Berryhill*, __ U.S. __, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citations, quotations, and brackets omitted). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* (quotations omitted). While a court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, a court does not reweigh the evidence or substitute its own judgment for that of Defendant. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

IV.   Consideration of Subjective Reports

In his first issue on appeal, Plaintiff asserts the ALJ erred in his consideration of Plaintiff's subjective reports regarding his seizure activity. In July 2018, Plaintiff reported to the Social Security Administration that he experiences two to three grand mal seizures per month, and petit mal seizures every week. AR 279. Plaintiff testified that during grand mal seizures, he cannot understand what people are saying to him, he experiences heavy breathing, foams at the mouth, and usually falls to the ground

and has convulsions. Afterward, it takes approximately 30 minutes to one hour for him to become fully aware of his surroundings. AR 42-43. Presuming he has not suffered a physical injury, he experiences severe muscle soreness hindering him from lifting his legs and arms, and often has a severe headache for up to two days. AR 43-44. During a petit mal seizure, Plaintiff "zones out," cannot understand what people are saying and cannot communicate, breathes heavily, and sometimes foams at the mouth. AR 42. Afterward, it usually takes approximately 15 to 30 minutes for him to be coherent again. *Id.*

Plaintiff contends the ALJ improperly discounted Plaintiff's subjective reports regarding his seizure activity and that his reasoning in doing so is not supported by substantial evidence. In response, Defendant argues the ALJ properly evaluated Plaintiff's subjective statements and points to several places in the discussion that show the ALJ considered the appropriate factors in said evaluation.

The framework for evaluating a plaintiff's subjective statements about his symptoms is the following:

> We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. **We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence,** including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you.

20 C.F.R. § 404.1529(c)(4) (emphasis added). In addition to considering the objective medical evidence, the ALJ also considers "statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms, . . . as well as the factors set forth in [the Social Security] regulations." Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *5. Other factors the ALJ considers include daily activities, the location, duration, frequency, and intensity of symptoms, medication an individual takes or has taken to alleviate pain or other symptoms, other measures an individual has attempted for relief of symptoms, and any other factors concerning an individual's functional limitations and restrictions due to symptoms. *Id.* at *7. "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." *Id.*

This Court's review of the ALJ's consideration of Plaintiff's subjective complaints is guided by two principles. First, such "determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Second, "findings as to [subjective reports] should be closely and

affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (additional alterations omitted).

Here, the ALJ determined Plaintiff suffered from one severe impairment, a seizure disorder. AR 12. Accordingly, he was required to evaluate Plaintiff's subjective assertions regarding "the intensity, persistence, and limiting effects" of his reported symptoms. 20 C.F.R. § 404.1529(c)(4). In his decision, the ALJ discounted Plaintiff's subjective reports regarding the effects of his seizures based on, *inter alia*, his conclusion that they were inconsistent. AR 17. Specifically, the ALJ explained:

> [A]lthough the claimant initially reported rarely having seizure episodes to the neurologist, he later reported multiple spells every month. Although the claimant reported experiencing injuries at times due to seizure activity, he underwent normal objective physical examinations. He did not have evidence of requiring medical attention for any injury. Further, although the claimant alleged problems with memory, concentration, and focus, upon examination, he had intact memory. He was generally cooperative and reported an ability to spend time with others. Although the claimant testified that he rarely drives, his driver's license had not been suspended or revoked due to seizures. Additionally, he reported an ability to concentrate enough to watch TV and movies for many hours every day, prepare simple meals, clean, do laundry, complete minor repairs and yard work, and shop in stores.

AR 17 (citations omitted). The ALJ clearly considered the appropriate factors in evaluating Plaintiff's subjective reports, including the medical record, the reported duration, frequency, and intensity of Plaintiff's symptoms, and Plaintiff's reported daily activities.

Plaintiff specifically challenges the ALJ's conclusions regarding Plaintiff's conflicting reports to his neurologist. Op. Br. at 7-8. Plaintiff began experiencing seizures in 2008. AR 644, 917-18. Plaintiff's physician prescribed Trileptal and Keppra, and these medications were effective in controlling his symptoms from approximately 2008 until 2018 or 2019. AR 906-07, 917-18, 942. During a physician visit on February 27, 2019, Plaintiff's treating physician, Dr. Winston Shipley, noted the following:

> At the time of his last appointment, he indicated he had rare [seizure related] episodes, although today he tells me he was not really being straight forward with me and in fact was having multiple spells every month. He provided a written diary multiple page[s] long describing each of the spells in detail, some of which would be characterized as full-blown spells of loss of awareness, other spells would be described as confusional spells, other spells described as jerking spells, where he would have tongue injury or injuring himself with bruising. His mother indicates that she has seen him have spells where he stares and seems detached for several minutes. He indicates his brother told him he had a staring spell that lasted 15 minutes recently. The patient tells me he is strictly compliant with his medication . . . . The patient at previous appointments had indicated he was in the process of filing for medical disability related to his health issues and I am not certain that ever took place or was successful.

AR 918.

Plaintiff essentially argues the ALJ should not have concluded his reports were inconsistent because he was honest in his February 27, 2019 report to the neurologist when he admitted his previous false reports. Op. Br. at 7 ("While the record does not indicate why [Plaintiff] was not immediately straightforward

regarding the frequency of his spells, he nevertheless provided a contemporaneous diary as support and owned up to the fact that he was having seizures more often than he initially led his neurologist to believe."). Plaintiff asserts the ALJ's conclusions and discussion of these events were unfair. *Id.* at 7-8.

While Plaintiff may find the ALJ's interpretation of the record was unfair, it was not inaccurate. The ALJ properly considered the medical record and concluded Plaintiff's subjective complaints were less reliable based on his previous inconsistent reporting of the same. Plaintiff simply disagrees with the conclusions drawn by the ALJ, and his disagreement is centered on arguments that would impermissibly require this Court to reweigh the evidence. *See Wall*, 561 F.3d at 1070 ("[The Court's] limited scope of review precludes us from reweighing the evidence or substituting our judgment for that of the agency." (quotations and alterations omitted)); *see also Watts v. Berryhill*, 705 F. App'x 759, 764 (10th Cir. 2017) ("Ms. Watts' argument that the ALJ should have found her subjective complaints fully credible because she sought treatment and took her medications is essentially asking this court to impermissibly reweigh the evidence and improperly substitute our judgment for the Commissioner's, which we may not do."); *Alarid v. Colvin*, 590 F. App'x 789, 795 (10th Cir. 2014) ("In citing what he contends is contrary evidence [to the ALJ's conclusion regarding the severity of the claimant's impairments], Mr. Alarid is asking us to reweigh the evidence, which we cannot do.").

Similarly, Plaintiff disagrees with the ALJ's conclusions regarding his daily activities, lack of medical records indicating treatment for injuries post-seizure, and the fact that Plaintiff's driver's license had not been suspended or revoked. Op. Br. at 8-11. Plaintiff testified that he occasionally injures himself during a seizure and when that occurs, he is "down" for longer periods of times, including up to two weeks. AR 43-44. He described injuries involving bleeding, a burned forehead from falling on the furnace, falling through walls, and his face so "torn up" that it looked like he had been assaulted. *Id.* As the ALJ noted, in spite of these severe injuries, there are no medical records indicating he received medical treatment for the same. AR 17. As Defendant explains, "[E]xaminations by Hoang D. Nguyen, M.D., a family physician, during the period at issue reflected neither any reports by Plaintiff of physical injuries nor note of such by the physician (Tr. 707-711-July 2018, 740-744-January 2019), despite significant, ongoing convulsive seizure activity he now asserts was occurring during this period." Doc. No. 22 at 7.

Plaintiff argues the ALJ's duty to develop the record required him to inquire as to why Plaintiff did not seek medical treatment for his allegedly severe injuries incurred during seizures. Op. Br. at 8. The Court agrees with Plaintiff "that every ALJ has 'a basic obligation . . . to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994) (quoting *Henrie v. United States Dep't of Health &*

*Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993)). "This duty is not a panacea for claimants, however, which requires reversal in any matter where the ALJ fails to exhaust every potential line of questioning." *Glass*, 43 F.3d at 1396 (citing *Henrie*, 13 F.3d at 361 (noting that it is not the ALJ's duty to become the plaintiff's advocate).

In *Maes v. Astrue*, 522 F.3d 1093 (10th Cir. 2008), in considering the plaintiff's assertion that the ALJ had failed to adequately develop the record, the court stated that "[a]lthough the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation." *Id.* at 1097 (citation omitted). The court then opined that doing so "would contravene the principle that the ALJ is not required to act as the claimant's advocate in order to meet his duty to develop the record . . . ." *Id.*

This Court is not inclined to find error in the ALJ's failure to further question Plaintiff regarding his alleged post-seizure injuries. Doing so would simply allow Plaintiff another administrative hearing at which to delve into an issue that could have been resolved at the previous hearing by Plaintiff and/or his counsel, or at the very least, explained in the briefing before this Court. The ALJ reasonably concluded that Plaintiff's reports of severe injuries post-seizure were undermined by the lack

of medical treatment for the same. Based on Plaintiff's testimony and a review of the record as a whole, this conclusion is supported by substantial evidence.

Plaintiff also takes issue with the ALJ's reliance on the fact that Plaintiff's driver's license had never been revoked. He argues the decision to revoke his driver's license would belong to his physician, and Plaintiff's testimony that he rarely drives should be sufficient. Op. Br. at 9. Plaintiff is again asking this Court to reweigh the evidence before the ALJ and reach a different conclusion, which the Court will not do. While Plaintiff did indeed testify that he rarely drove, the evidence in this matter indicates that despite a history of allegedly increasing seizure activity since 2008, no medical authority had taken steps to have Plaintiff's license revoked. The ALJ concluded this undermined Plaintiff's subjective reports of the frequency, severity, and intensity of his seizures. Plaintiff disagrees with the ALJ's conclusion in this regard, but a mere disagreement is not a basis for reversal. *See Abdelmeged v. Colvin*, No. 14-cv-01643-REB, 2015 WL 5047645, at *5 (D. Colo. Aug. 26, 2015) ("Plaintiff's mere disagreement with the ALJ's conclusion provides no basis for this court to reweigh the evidence in the manner he implicitly requests.") (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993)).

Finally, Plaintiff takes issue with the ALJ's reliance on his daily activities in evaluating Plaintiff's subjective reports. He complains the ALJ did not consider that Plaintiff could not perform his daily activities post-seizure. Op. Br. at 10. However,

as with each of the issues raised above, the ALJ's discussion of Plaintiff's own reported activities is accurate and supported by the record.

The ALJ's comparison of Plaintiff's medical records with his testimony, as well as Plaintiff's own reported daily activities, provided an adequate justification and explanation for his findings and provides no basis for remanding Defendant's decision. Thus, the Court finds no grounds for reversal in the ALJ's assessment of Plaintiff's subjective reports. *See Morgan v. Berryhill*, No. CIV-17-413-BMJ, 2018 WL 652335, at *6 (W.D. Okla. Jan. 31, 2018) ("Plaintiff has failed to show that the ALJ ignored or misstated evidence in his credibility assessment, and this Court will not reweigh that evidence. So, the Court [] finds no grounds for reversal."); *Cummings v. Colvin*, No. CIV-14-539-L, 2015 WL 3960899, at *1, *10 (W.D. Okla. June 29, 2015) (rejecting the plaintiff's challenge to the ALJ's credibility assessment where the ALJ considered the testimony plaintiff relied upon, finding that the court could not reweigh the same evidence).

V.   Step Five

Finally, Plaintiff contends the ALJ erred at step five of the sequential evaluation process. Op. Br. at 11-15. This assertion, however, is based upon Plaintiff's contention that the ALJ erred by failing to present a hypothetical question to the VE that included additional limitations related to his seizure disorder. *Id.* Plaintiff's argument is closely related to the arguments discussed above, as Plaintiff

13

contends the ALJ's failure to properly consider and evaluate his subjective reports regarding the intensity, persistence, and limiting effects of his seizure disorder led to him posing an incomplete RFC hypothetical to the VE. *Id.* For the reasons discussed above, the ALJ's RFC determination is supported by substantial evidence, and the ALJ was under no obligation to include limitations in the RFC that are not supported by the record.  *See Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016) ("The [ALJ] had to ask only about the effect of those limitations ultimately assessed; the judge did not need to ask about the effect of limitations that he didn't believe applied.").

VI.    Conclusion

Based on the foregoing analysis, the decision of Defendant is affirmed. Judgment will issue accordingly.

ENTERED this   26th   day of  August, 2021.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE